**KANSAS BANKERS SURETY COMPANY, Plaintiff,**

v.

**BANK OF ODESSA, Defendant.**

**Civ. A. No. 20487-2.**

United States District Court,
W. D. Missouri, W. D.

Dec. 24, 1974.

**556**

Billy S. Sparks, of Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, Mo., for plaintiff.

Jack G. Beamer, Kansas City, Mo., for defendant.

## MEMORANDUM OF DECISION AND ORDER

COLLINSON, District Judge.

This is an action brought by Kansas Bankers Surety Company (KBS), as assignee of Fidelity State Bank & Trust Company (Fidelity), against the Bank of Odessa (Odessa) to recover money collected by Odessa from Fidelity on two drafts which bore forged or unauthorized indorsements. By stipulation of the parties, this case has been submitted to the Court for decision on the facts stipulated in Standard Pretrial Order No. 2, the pleadings, and the depositions and exhibits submitted with the case. The Court herewith enters its memorandum of decision in accordance with Rule 52, Fed.R.Civ.P.

### I.

Plaintiff KBS is a Kansas corporation with its principal place of business in Kansas. Defendant Odessa is a Missouri banking corporation with its principal place of business in Missouri. The amount in controversy exceeds the sum of $10,000, exclusive of interest and costs. This Court has subject matter jurisdiction. 28 U.S.C. § 1332 (1970).

### II.

Briefly stated, the stipulated facts pertinent to the issues presented are as follow. On April 21, 1971, and after a credit check by Fidelity, the partnership of William Q. Lemons and Charles W. Allee entered into an agreement with Fidelity whereby the partnership would be given a line of credit up to approximately $125,000 for the purchase

of cattle. Under the terms and conditions of that agreement, the partnership was to deposit $25,000 at Fidelity as a 20% margin for the loan and was to deliver a security agreement and a promissory note in blank payable to Fidelity which was to be filled in by Fidelity for the total amount of the loan. The loan was to bear interest at the rate of 7½ per cent. In addition, the following oral conditions were imposed by Fidelity:

1. The seller of any cattle to the partnership must warrant on the drafts that the cattle sold be free and clear of any liens or encumbrances.

2. Lemons was to acquire a Kansas cattle brand and brand all cattle purchased with that brand.

3. The cattle purchased were to be kept on farms or ranches at designated places in Kansas.

4. Lemons and Allee were required to file with the bank proper security financing statements and security agreements.

5. The cattle buying account was required to be opened at Fidelity.

This account, #019976, was opened at Fidelity, and Fidelity provided "Bill of Sale Draft" forms to Lemons for use in purchasing the cattle.[1] Lemons' signature was the only signature required on these drafts.

In June, 1971, Lemons requested that Fidelity provide him with a similar financing agreement on his own account. This was agreed to by Fidelity under the same terms and conditions as encompassed in the partnership agreement. Lemons deposited the 20% margin and was given a line of credit of approximately $30,000 for the purchase of cattle. The same cattle buying account was used for this transaction as for the partnership. In both accounts, drafts drawn for the purchase of cattle were first applied against the margin and then against the line of credit. When a "Bill of Sale Draft" was forwarded to Fidelity for collection, Fidelity would inspect the draft and then advance sufficient funds to cover the amount of the draft. Thus, after the 20% margin had been exhausted, the cattle buying account would have a zero balance at the end of each business day. The drafts were retained by Fidelity as evidence of the amount of credit advanced pursuant to the loan agreements.

Pursuant to Lemons' individual loan agreement with Fidelity, Lemons executed a Bill of Sale Draft to the order of Central Missouri Sales Company dated July 9, 1971, in the amount of $10,510.78. The order for payment was directed to Fidelity. In naming Central Missouri Sales Company as payee, Lemons intended that Central Missouri Sales Company have no interest in the proceeds of the draft. The draft was signed "William Q. Lemons-cattle account." In the bill of sale portion of the draft, Lemons or his agent forged the signature "Central Mo. Sales Co., D. J. Jobe (Manager)" as seller of the cattle. This draft was presented for payment at Odessa and was indorsed on the reverse side by Lemons or his agent in the name of Central Missouri Sales Company and by Lemons in his own name. Odessa advanced the face amount of the draft which was deposited in the account of William Q. Lemons at the Bank of Odessa, and forwarded the draft for collection through the normal banking channels. Fidelity honored the draft and forwarded the face amount of the draft back through banking channels to Odessa.

Lemons executed a second Bill of Sale Draft to the order of Central Missouri Sales Company dated July 19, 1971, in the amount of $10,217.34, and for the purported purchase of 51 Holstein steers. This draft bore the same signatures and indorsements as the July

1. A copy of the face of the BILL OF SALE DRAFT OF JULY 19, 1974 is appended at the end of this memorandum.

9 draft, and again Lemons intended that the payee have no interest in the draft. This draft was also presented at Odessa and honored and paid by Fidelity.

Central Missouri Sales Company had not sold the cattle described on these drafts to Lemons and had no interest in the proceeds of these drafts.

In July, 1971, Fidelity determined that there might be a shortage of partnership cattle and determined that there were no cattle securing Lemons' individual account. Fidelity thereupon filled in the promissory notes in the amounts of $107,641.88 (partnership account) and $29,198.37 (individual account), and called both loans. The cattle which existed and were subject to the partnership security interest were sold to satisfy the partnership loan. The excess proceeds from that sale were applied to other outstanding debts owed Fidelity by Lemons. Fidelity subsequently made demand for reimbursement to the Federal Reserve Bank and to Odessa. When Odessa refused to reimburse Fidelity, Fidelity made demand on KBS for the amount of these two drafts under a bankers blanket bond issued by KBS to Fidelity. After negotiation, KBS paid Fidelity the sum of $20,828.12 and Fidelity executed a Receipt and Agreement assigning and subrogating to KBS "any and all causes of action the Bank has against any and all persons, firms, partnerships, associations and corporations which are or may by liable to the Bank by reason of the loss sustained by the Bank and paid by the Company." KBS subsequently instituted the present lawsuit as Fidelity's assignee to recover the $20,828.12.

### III.

Plaintiff KBS contends that defendant Odessa is liable for the amount of its payment to Fidelity on two theories: (1) for breach of the warranties given under Mo.Rev.Stat. § 400.4–207(1), V. A.M.S. (1969); and (2) for conversion of the instrument by reason of paying on a forged indorsement under Mo.Rev. Stat. § 400.3–419(3) (1969). Defendant Odessa has raised three defenses: (1) that KBS is not the real party in interest; (2) that the loss sustained by KBS or its assignor was occasioned by Lemons' default on the loan agreement and the lack of collateral for the loan, and not by reason of any acts or omissions by Odessa with respect to the drafts in question; and (3) that the indorsements of Central Missouri Sales Company were effective. Because we conclude that the indorsements were effective, we need not, and do not, address the other defenses raised. For the purposes of this decision we will assume without deciding that KBS is the real party in interest.

One of the initial matters in dispute is the nature of these "Bill of Sale Drafts" and the relationship of the parties to these instruments and to each other. Plaintiff contends that these instruments are trade acceptances drawn by Central Missouri Sales Company as seller on Lemons as buyer which were paid at Fidelity. This contention is not supported by the record.

Fidelity had not engaged in this type of financing before and "borrowed" the form of these drafts from another banking institution. The purpose of this special form of draft was to permit Lemons to draw on the line of credit advanced by Fidelity and to restrict Lemons' use of the money to the purchase of cattle so that Fidelity could insure that it would have its collateral for the credit advanced. The bill of sale portion of the draft served the dual purpose of providing the seller's warranty as required by the loan agreement, and of providing Fidelity with a record of the number and types of cattle subject to its security interest. The drafts were designed and used as the means by which Lemons could draw on his account at Fidelity to purchase cattle. Further, these instruments on their faces and in the manner used do not comport with what is generally recognized as a trade acceptance or documentary draft. See Newark Steel Drum Co., Inc. v. Penn Crest Oil & Grease Corp., 4 U.C.C.Rep.

Serv. 316 (N.Y.Sup.Ct.1967); Farnsworth, Documentary Drafts Under the Uniform Commercial Code, 22 Bus. Law. 479 (1967). The Court finds and concludes from the stipulated facts and the record submitted that these "Bill of Sale Drafts" are order instruments drawn on Fidelity which were payable on demand and are therefore checks. Mo.Rev.Stat. § 400.3–104(2)(a) and (b) (1969). Accordingly, Lemons was the drawer of these checks, Central Missouri Sales Company was the payee, Fidelity was the drawee bank, and Odessa was the depository bank.

The parties have stipulated that the indorsements of Central Missouri Sales Company were forged. In the absence of other circumstances, these forgeries could result in defendant being liable for breach of warranty, Mo.Rev. Stat. § 400.4–207(1) (1969), or for conversion. Mo.Rev.Stat. § 400.3–419(3) (1969). Odessa contends that there was no breach of warranty or conversion because the indorsements were effective by operation of Mo.Rev.Stat. § 400.3–405(1)(b) (1969).

Mo.Rev.Stat. § 400.3–405(1)(b) provides:

(1) An indorsement by any person in the name of a named payee is effective if

. . . . . .

(b) a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument;

. . . . . .

It is stipulated that Lemons executed these drafts with the intention that Central Missouri Sales Company have no interest in them and that he or his agent placed the signatures of Central Missouri Sales Company on both the face and back of these instruments. These stipulated facts present precisely the situation noted in paragraph (c) of Comment 3 of § 400.3–405. Therefore, the indorsements on these instruments were effective. Accordingly, the warranties given by defendant Odessa under § 400.4–207(1) were not breached and defendant did not convert these instruments. The Court notes that the same result would attach even if these instruments were considered to be trade acceptances because these instruments were drawn with the intention that Central Missouri Sales Company have no interest in them.

IV.

For the reasons stated herein, it is

Ordered that the Clerk enter judgment in favor of the defendant and against the plaintiff. Costs are to be taxed to plaintiff.